Joseph A. Cox, ¡3.
This is an application for the settlement of the account of the trustee and for construction of article Ninth of the will in which the testator bequeathed his residuary estate to and for the benefit generally of the New York Protestant Episcopal Public School which operates Trinity School at 139 West 91st Street, New York City. The will specifies that the legacy shall be used to provide a scholarship fund from which there shall be awarded annually for the 50 years following the testator’s death three prizes of $250 each to the three students in the four high school classes who attain the highest yearly marks and three additional prizes to the holders of the highest four year averages at the end of which time the fund will go outright to the school. The awards are restricted to pupils able to satisfy the condition which is expressed in article Ninth (D) of the will in the following terms: u (D) No pupil shall be entitled to receive one or more of said prizes, unless he (1) shall be then a communicant in good standing in the Protestant Episcopal Church in the United States of America and (2) shall be the son of native born American citizens.”
*625 Trinity School from its inception has been affiliated with the Protestant Episcopal Church in the City of New York and the rector, wardens and vestrymen of Trinity Church have the power to nominate and select the members of the board of trustees, the rector acting ex-officio as its president. One year before the testator’s death in 1938 more than 83% of the members of the graduating class of the school were communicants of the Protestant Episcopal Church but in the past six years the number of pupils professing that faith never exceeded 40% of the senior school enrollment. There has never been any record maintained as to the number of students who were sons of native-born American citizens. As a result of the alteration in the composition of the student body only 125 prizes have been awarded in the years since the death of the testator though, had there been a sufficient number of qualified pupils, the number would have been 500. Because of this drastic change in circumstances the board of trustees has reached the conclusion that the criteria for the award of the Hawley prizes are self-defeating and has passed a resolution stating it to be its purpose to seek amendment of the legacy. The petitioner acting upon this decision asks in this proceeding that the court permit the removal of the restrictions conditioning awards upon the religious faith or national origins of otherwise eligible recipients.
The petitioner, acting as successor trustee by designation in the will because of his position as headmaster of the school, offers as a further reason in support of the application the fact that the principal of the residuary trust has increased in value from $180,000 at the date of the testator’s death to $1,071,000 as of the terminal date of the account with a resultant increase in income from $7,000 to $53,000 per annum. While this may be cause for deserved satisfaction it does not furnish any support for the relief requested for the reason that the testator provided a method of adjustment to such a contingency in directing that the surplus income over and above that required to make the prize awards was to be retained and added to the principal of the trust as to one third of such excess with the balance to be paid to the school corporation for the general purposes of the institution.
There can be at this time of course no question of the fact that there resides in the court the power to remove restrictions upon a bequest if literal compliance with the conditions imposed by the testator would operate to defeat his dominant purpose. It is that power which the petitioner invokes here in asking that the court resort to cy pres (Personal Property Law, § 12), However, before relief within the compass of that doctrine may be *626 afforded the court must be satisfied that the testator was motivated by a general overriding charitable purpose, that the elimination of the otherwise lawful conditions is essential, from the standpoint of practicability, to the accomplishment of that purpose, and, finally, that the variation from the terms of the will is not merely a matter of satisfying the desires and suiting the convenience of the trustee. (Connecticut Coll. v. United States, 276 F. 2d 491; and see Restatement, Trusts [2d ed.], § 381; “ Constitutionality of Restricted Scholarships,” 33 N. Y. U. L. Rev. 604; “ Charitable Trusts, The Fourteenth Amendment and the Will of Stephen Girard”, 66 Yale L. J. 979; 4 Scott, Trusts [2d ed.], § 370.5).
A restriction very much like that which appears in the present will was the subject of a recent decision in the Supreme Court of New Jersey. (Howard Sav. Inst. v. Peep, 34 N. J. 494.) In that case the testator had created a scholarship loan fund at Amherst College “for deserving American born, Protestant Gentile boys of good moral repute, not given to gambling, smoking, drinking or .similar acts ” (p. 497). The board of trustees of the college adopted a resolution stating that acceptance of the trust with the conditions imposed by the testator would constitute a violation of the college charter and declined the legacy unless the restrictions were removed. The Chancery Division of the Superior Court of New Jersey invoking the doctrine of cy pres held that the purpose of the testator to restrict the fruits of the bequest to American Protestant gentiles was demonstrably subordinate to his principal objective to benefit the college and accordingly struck the restriction from the legacy (61 N. J. Super. 119). In affirming, the Supreme Court, Pboctob,, J., writing, cited with approval the decision in Matter of Young Women’s Christian Assn. (96 N. J. Eq. 568) in which the following statement of the rule is to be found (p. 574): “Where a testator has two objects in view, one primary or general and the other secondary or particular, and these are, literally speaking, incompatible, the secondary object must be sacrificed in order that effect may be given to the general object. Where the will exhibits an intention that the donation shall be devoted to a specific charitable purpose and prescribes a particular mode or means by which the purpose shall be carried out, the failure of the mode or means after the donation has taken effect, will not defeat the charitable purpose.”
The New Jersey cases have their counterparts in New York. The rule was invoked by Surrogate Foley in Matter of Stuart (183 Misc. 20). In that case the testatrix had left her literary collection to the Lenox Library with the condition that it never *627 be exhibited on the Lord’s Day. Subsequently, the Lenox Library became a part of the New York Public Library and the Stuart collection was exhibited in the latter’s building for some period of time. Because of the overcrowded conditions resulting from the enlargement of its collection the Public Library arranged with the New York Historical Society to lend the Stuart Library to the latter institution, which agreed to accept it upon condition that the prohibition against its exhibition on Sunday be removed. The Surrogate held as follows (p. 25): “ The dominant purpose of the testatrix here was to make it possible for the general public to view and enjoy the books, paintings and works of art in a collection. The passage of time since the death of Mrs. Stuart in 1891 and the changed and liberalized conditions throughout this long period of over fifty years, justify, in the opinion of the Surrogate, the relaxing of the restrictions imposed as to the preservation, maintenance and exhibition of the collection and particularly the prohibition against its exhibition on Sunday.”
In arriving at the conclusion at which he did the Surrogate expressly followed the decision in Matter of Neher (279 N. Y. 370) which established the principle that a special restriction “ grafted on ” to a general charitable purpose may be ignored when compliance would be impracticable. That is the situation which the present will and the change in circumstances have combined to create here. The dedication of his entire residuary estate to the school is ample evidence of the fact that Trinity was the object of the testator’s first concern rather than the religious affiliations and racial backgrounds of the students who will reap the collateral benefit of his generosity. To that extent it may be said that the restrictive condition was 11 grafted on ” to the fundamental objective of the testamentary program.
It is true that there are alternatives which might permissibly be exploited to secure the full performance of the plan proposed by the testator but none of them appears to be feasible. For example, despite the availability of the formula prescribed by the testator as described earlier, its employment would in the end tend to defeat the accomplishment of his first purpose. The same thing would be true of an attempt to divert the fund to another Episcopal school, if one could be found which would administer the trust in strict accordance with the restrictions imposed in the will. Finally, the substitution for the present incumbent of a trustee willing to carry out the program and adhere to the conditions fixed by the testator would appear to present grave difficulties of execution whatever may have been the experience resulting from the adoption of such a plan in the *628 Girard will caso (Matter of Girard Coll. Trusteeship, 391 Pa. 434, cert, denied 357 U. S. 570; and cf. dissenting opinion in Howard Sav. Inst. v. Peep, 34 N. J. 494, supra). None of these proposals could be said to present a practicable solution of the problem of keeping the whole program intact, and, absent such a method, excision of the collateral appendages offers the only-means of achieving the goals set by Mr. Hawley.
The court has reached the conclusion that the petitioner has satisfactorily demonstrated that the conditions which would otherwise operate to prevent the application of the cy pres doctrine have been overcome in that it has been shown that a specific charitable objective was clearly the dominating factor inspiring the testator, that the conditions he imposed are collateral to that objective and not of the essence of the gift and, finally, that the administration of the trust in strict accordance with the terms of the will has become a task of almost insurmountable difficulty in view of the annually diminishing number of eligible candidates for the prizes and the tenfold increase in the value of the fund. The removal of the restrictive conditions would undoubtedly forward the harmonious progress of the school in which the testator’s interest lay .so deep and so facilitate the accomplishment of the purpose to which he dedicated his residuary estate. The application will accordingly be granted.
The application for the appointment of the petitioners ’ nominee as successor cotrustee is granted. Counsel fees have been fixed in the amount requested upon the consent of those interested.