[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REVISED MEMORANDUM OF DECISION
This case concerns Beardsley Park and the Beardsley Zoological Gardens in Bridgeport. James Walker Beardsley deeded land to the city of Bridgeport in 1878, and 1881, for the purpose of creating a park. Both deeds contain reversion clauses. Since the park's creation, Bridgeport has assumed much of the financial burden of maintaining the park. Recently, Bridgeport has struggled financially, nearly to the point of bankruptcy.[1] In an effort to preserve the park and its zoo in accordance with the intent of Beardsley, and to assist the city financially, the state of Connecticut and the city of Bridgeport, with the consent of the defendant, Lynne Marie Beers White, an heir of Beardsley, have submitted the following proposal to the court for approval.
The plaintiffs seek to transfer portions of Beardsley Park and the Beardsley Zoological Gardens from the city of Bridgeport to the state Department of Environmental Protection Parks Division and the Connecticut Zoological Society, Inc. in exchange for approximately ten CT Page 3719 million dollars[2] to be applied to the city's bond indebtedness.
The plaintiffs also seek a declaratory judgment regarding the effect of reverter and forfeiture clauses contained in the deeds of gift granting portions of the park to the city of Bridgeport in light of the proposal. In addition, the plaintiffs seek to transfer the administration of the Elton G. Rogers Fund, which was donated to the city to support the improvement of the zoo, to the Connecticut Zoological Society, Inc.
The procedural context of this case is as follows. On April 9, 1994, the plaintiffs, the Attorney General of the state of Connecticut,[3] and the city of Bridgeport, filed a nine count second amended complaint against the defendant, White, and other named and unnamed heirs of James Walker Beardsley. The other named defendants have been defaulted for failure to appear.[4] On December 6, 1994, the plaintiffs filed a stipulation for judgment as to White.[5]
 I
The plaintiffs request that the court, pursuant to the equitable doctrine of deviation, enter orders transferring for consideration portions of Beardsley Park and the Beardsley Zoological Gardens from the city of Bridgeport to the state Department of Environmental Protection Parks Division and the Connecticut Zoological Society, Inc.
The equitable doctrine of deviation provides that "`[t]he court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust.'"Britton v. Killian, 27 Conn. Sup. 483, 488, 245 A.2d 289 (1968), quoting Restatement (Second) of Trusts § 381 (1959). The doctrine of deviation "applies to both private and charitable trusts and may appropriately be invoked whenever, through the intervention of unforeseen developments, achievement of the trust purposes becomes impracticable or impossible because of the impact of one or another of the incidental provisions of the trust." Id., citing Restatement (Second) of Trusts § 381, comment a. Because deviation is a doctrine of trust law, a threshold issue is whether the 1878 and 1881 Beardsley deeds created trusts.
The plaintiffs claim that the gifts of land by Beardsley for public park purposes constitute a charitable trust or use. "`A charitable trust is one which performs some governmental function, such CT Page 3720 as fostering education, relief of poverty, care of the sick or aged, burial of the dead, or performs some other public task which relieves the governmental burden of the state. Because charitable trusts perform such governmental duties, they are accorded state recognition and protection, and receive the benefit of state and federal tax exemptions as well as numerous other special statutory privileges.'Lockwood v. Killian, 172 Conn. 496, 512, 375 A.2d 996 (1977) [(Bogdanski, J., concurring in part and dissenting in part)]." Bannonv. Wise, 41 Conn. Sup. 469, 474-75, 586 A.2d 639 (1990), aff'd,217 Conn. 457, 586 A.2d 596 (1991); see also General statutes § 45a-514;[6] Nobbs and Stevenson, Connecticut Probate Law, § 105 (1905).
"`The definition of charitable uses and purposes has expanded with the advancement of civilization and the daily increasing needs of men. . . . It no longer is restricted to mere relief of the destitute or the giving of alms but comprehends activities, not in themselves self-supporting, which are intended to improve the physical, mental and moral condition of the recipients and make it less likely that they will become burdens on society and more likely that they will become useful citizens. . . .'" Bannon v. Wise, supra, 41 Conn. Sup. 474, quoting Camp Isabella Freedman of Connecticut, Inc. v. Canann,147 Conn. 510, 514-15, 162 A.2d 700 (1960); see also General Statutes § 47-2.[7]
"Uses and trusts are not so much different things as different aspects of the same subject. A use regards principally the beneficial interest; a trust regards principally the nominal ownership." Black's Law Dictionary (5th. Ed. 1979), p. 1382.
The plaintiffs, rely primarily on Winchester v. Cox, 129 Conn. 106,26 A.2d 592 (1942), to support their claim that the gifts of land by Beardsley constitute a charitable trust or use.
In Winchester, a condemnation case, several grantors by three deeds conveyed land to the town. Two of the deeds "recited that the consideration was the agreement of the town forever to maintain the land as a park, and the third recited that the land conveyed was to be forever used as a public park. None of the deeds expressly provided fora reverter . . . ." (Emphasis added.) Id., 108-09.
The court held that "[t]o characterize the capacity in which a municipality holds land conveyed to it for carrying out one of its proper purposes as that of a trustee, while useful in many instances in working out the rights of the parties, is not, in the absence of CT Page 3721 statute, altogether accurate, and its capacity is rather that of a quasi trustee."[8] Id., 112. The court added that "[w]e cannot construe the deeds involved in this action as sufficient to make the town strictly a trustee of the lands in question . . . . " Id. The court went on to state that "[w]hen, however, the town accepted the lands under the agreements and for the purpose of perpetually maintaining them as a park, a valid charitable use came into existence . . . and the perpetual maintenance of this use is required by the statute of Charitable Uses." (Citations omitted.) Id.
The plaintiffs also rely on cases from other jurisdictions, which have upheld as charitable, gifts given to promote the permanent preservation of park land. See, e.g., Noice v. Schnell, 101 N.J. Eq. 252,137 A. 582 (1927); Middlebury College v. Central PowerCorporation, 101 Vt. 325, 143 A. 384, 389 (1928); Middlebury College v.Town of Hancock, 115 Vt. 157, 55 A.2d 194, 198 (1947). In these cases, like Winchester v. Cox, supra, none of the deeds expressly provided fora reverter. In the present case, however, both Beardsley deeds expressly provide for a reverter. Moreover, the nature of an estate conveyed by a deed for park purposes is susceptible of various constructions. See generally, Annotation, "Nature of Estate Conveyed by Deed for Park or Playground Purposes," 15 ALR2d 975. Some courts have characterized the deed as a fee simple absolute;[9] a fee simple determinable;[10] a fee simple subject to a condition subsequent;[11] or, a trust.[12]
"A key distinction between language creating a conditioned fee and that creating a public trust involves words of reversion in the former.Opinion of the Justices, 369 Mass. 979, 338 N.E.2d 806 (1975). Because intent and res are the basic elements of a valid trust, any residual right in the grantor, such as a right of reentry, is inconsistent with the intent to create a public trust in perpetuity: `"[W]here it clearly appears that the [grantor] intends that the res shall revert to himself or his heirs if the charitable purpose is not served, the devise is not a charitable trust, but is construed as some type of absolute or conditioned gift."' In re Application of Mareck to Register Title,257 Minn. 222, 228, 100 N.W.2d 758, 762 (1960)." Abboud v. Lakeview, Inc.,
supra, 391 N.W.2d 580. In short, "[a] gift may have a charitable purpose and yet not constitute a charitable trust." Application ofMareck, supra, 100 N.W.2d 762.
"Although the surrounding circumstances are admissible in determining the intent of the parties, when interpreting the language of a deed the question is not what the parties may have meant to say, but the meaning of what they actually did say." American Trading RealCT Page 3722Estate Properties, Inc. v. Trumbull, 215 Conn. 68, 75, 574 A.2d 796
(1990). "Absent indication of a contrary intent, the language in a deed will be construed using its ordinary and natural meaning."D'Addario v. D'Addario, 26 Conn. App. 795, 801, 603 A.2d 1199 (1992). Moreover, "`wherever possible each part of the scrivener's phraseology should be given some import.'" Id., 800, quoting Peckheiser v. Tarone,186 Conn. 53, 59, 438 A.2d 1192 (1982).
The Beardsley deed conveyed in 1878 provides in relevant part:
 to have and to hold the above granted and bargained premises with the privileges and appurtenances thereof unto the said The city of Bridgeport and their successors as and for a Public Park to be designated and known as Beardsley Park with the unlimited and perpetual rights in said city to use and improve the same for that purpose. But it is hereby provided that if said city shall at any future time attempt to devote said premises or any part of the same to any other use than that of a Public Park designated as aforesaid or shall attempt to deliver or convey the same or any part thereof said city shall thereupon forfeit all right and title to said premises and the absolute title to same shall revert in the Grantor his heirs and assigns.
Notably, the granting clause gives the land to "The city of Bridgeport and their successors . . . ." The granting clause appears to conflict with the reverter and forfeiture provisions because, if Bridgeport were to seek a subsequent administrator or "successor" as the donor allowed for in his deed, it would necessitate a transfer or conveyance to allow the successor to effectively take over the park. See Moses H. Cone Memorial Hospital v. Cone, 231 N.C. 292,56 S.E.2d 709, 712 (1949).
The plaintiffs provide an explanation, based on the surrounding circumstances at the time of the deed conveyance, for Beardsley's use of the term "successor" in conjunction with the reverter and forfeiture clauses. Section 25 of Bridgeport's city Charter permitted the common council of the city to appropriate funds for the development of parks only in the one-mile radius from city hall. The land in the 1878 Beardsley deed was not within the one-mile radius. A special act amending the city charter to allow the city to appropriate funds for park development beyond the one-mile radius was not passed until March 25, 1880.
The plaintiffs suggest that Beardsley used the term "successor" CT Page 3723 along with the reverter and forfeiture clauses because he wanted to proceed with his plans to create a park, but was concerned that the charter amendment would not be passed, or that public opinion would not favor park development through city appropriations. The plaintiffs claim that Beardsley wanted the land to be used as a public park, but was concerned that the city would try to sell the land to a private interest if the park could not be built.[13]
Beardsley's use of the term "successor" and his use of the reverter and forfeiture provisions cannot be reconciled based on the surrounding circumstances. If Beardsley's concern was that the city might convey the land to a private interest, he could have expressed that intent specifically in the deed.
In analyzing the deed language further, it is significant that the forfeiture and reverter provisions use "but if" language characteristic of a fee simple subject to a condition subsequent. "[T]he word `if' [is] a word of art which traditionally has been held to create a condition subsequent." Lawyers Trust Company v. City of Houston,
supra, 359 S.W.2d 890; see also PCK Properties, Inc. v. City ofCuyahoga Falls, 176 N.E.2d 441, 444 (Ohio 1960) (stating that "[l]anguage creating a condition subsequent may follow from: `provided that,' `but if,' or `upon the express condition.'"); see also D'Addariov. D'Addario, supra, 26 Conn. App. 801. In short, the language of this deed, notwithstanding the term "successor," is consistent with a fee simple subject to a condition subsequent.
The 1881 Beardsley deed provides in relevant part that the three parcels of land are "to be forever reserved, held, improved and used by said city of Bridgeport as a public park to be called by the name of `Beardsley Park' and for no other purpose."[14] The deed further provides that if the "City of Bridgeport shall fail to comply with any one of said conditions then this deed shall be void, and the title to the above described premises shall revert to said Grantor and his heirs at law. And upon such breach of condition they shall be entitled to enter upon said premises and possess the same as their own Estate."
The 1881 deed, unlike the 1878 deed, does not use the word "successors." Also, the land is "to be forever . . . held . . . by said city of Bridgeport . . . ."[15] In addition, the forfeiture and reverter language also includes a right of reentry. The language of this deed, like the first deed, is consistent with a fee simple subject to a condition subsequent.
Based on the language of the two Beardsley deeds, the court finds CT Page 3724 that each deed created a fee simple subject to a condition subsequent.[16]
As stated earlier, deviation is a trust doctrine. See Matter ofEstate of Offerman, 505 N.E. 413, 417 (Ill.App. 3 Dist. 1987); see alsoMatter of Estate of Craig, 174 Ariz. 228, 848 P.2d 313, 320 (1992);Trustees of Dartmouth College v. City of Quincy, 357 Mass. 521,258 N.E.2d 745 (1970); Cleveland Museum of Art v. O'Neil,
72 Ohio L. Abs. 11, 129 N.E.2d 669, 671-72 (1955); Colin McK. Grant Home v. Medlock,292 S.C. 466, 349 S.E.2d 655, 658 (1986). The plaintiffs, however, suggest that the deviation doctrine applies to charitable gifts in general.
The plaintiffs state that "[t]he equitable doctrine of deviation is one that has been both recognized and applied by Connecticut courts to charitable gifts in previous cases." In support of this claim, the plaintiffs cite the following Superior Court cases: Britton v.Killian, 27 Conn. Sup. 483, 488, 245 A.2d 289 (1968); Connecticut Bank Trust Co. v. Hartford Hospital, 29 Conn. Sup. 158, 166, 276 A.2d 792
(1971); Connecticut Bank Trust Co. v. Johnson Memorial Hospital,30 Conn. Sup. 1, 9, 294 A.2d 586 (1972); and MacCurdy-Salisbury EducationalFund v. Killian, 30 Conn. Sup. 203, 208, 309 A.2d 11 (1973). With the exception of MacCurdy, the courts in these cases applied the doctrine of deviation to charitable gifts that were trusts.[17] In MacCurdy the court extended the application of the deviation doctrine to a charitable corporation because charitable corporations are generally subject to the same restrictions as charitable trusts. Id., 209-10.
In the present case, there is no trust. Moreover, there is no charitable corporation. Furthermore, there is no appellate authority in Connecticut that permits this court to apply the trust doctrine of deviation to the terms of gift deeds, which are in the nature of a fee simple subject to a condition subsequent. The doctrine of deviation is inapplicable to this case. The plaintiffs' request for relief pursuant to that doctrine is denied.
 II
The plaintiffs also request that the court enter declaratory judgments that the various transfers of park land do not trigger the respective reversionary and forfeiture provisions in the deeds and, further, that Bridgeport may retain the proceeds from the various land transfers.
"An action for declaratory judgment is a special proceeding. . . ." CT Page 3725 (Internal quotation marks omitted.) Wilson v. Kelley, 224 Conn. 110,121, 617 A.2d 433 (1992). "The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." General statutes § 52-29(a); see also Practice Book § 390. "The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties . . . and to make certain that the declaration will conclusively settle the whole controversy." (citations omitted; internal quotation marks omitted.) Mannweiler v. LaFlamme, 232 Conn. 27, 33, ___ A.2d ___ (1995).
The plaintiffs question whether the transfer of park land from the 1878 and 1881 deeds from the city of Bridgeport to the state of Connecticut would trigger the reversionary and forfeiture provisions of the two deeds. The plaintiffs also question whether transfer of zoo property under the 1878 and 1881 deeds from the city of Bridgeport to the Connecticut Zoological Society, Inc. would trigger the reversionary and forfeiture provisions of the two deeds.
"Conditions subsequent are abhorred by the law and so too are forfeitures upon condition subsequent." Port Authority of AlleghenyCounty v. Flaherty, supra, 293 A.2d 156. Moreover, "language which may defeat an estate must be strictly construed and always against rather than in favor of a forfeiture." Johnson v. City of Hackensack, supra,491 A.2d 17. In short, "courts require the violation of a condition which involves a forfeiture to be clearly established." Carpender v.City of Brunswick, supra, 39 A.2d 42. Substantial compliance with the condition is generally held to be sufficient to avoid a forfeiture. See Lassiter v. Town of Oxford, 234 F.2d 217, 219 (4th cir. 1956); see also Central Land Co. v. Grand Rapids, supra, 4 N.W.2d 488; Johnson v.Hackensack, supra, 491 A.2d 17 (minor deviation from use will not effect forfeiture as long as specified use is substantially carried out).
As Justice David Shea observed, while a judge of the superior court, "[c]ourts ought not to attribute to donors a nobility of purpose or loftiness of sentiment beyond that warranted by the evidence in order to achieve a result inconsistent with their intentions as expressed." Connecticut Bank Trust Co. v. Johnson Memorial Hospital,
supra, 30 Conn. Sup. 12.
Especially in light of these caveats, the court holds that a CT Page 3726 conveyance between the city of Bridgeport and the state of Connecticut would not trigger the reversionary and forfeiture provisions of the 1878 and 1881 deeds. The name, form or level of the political entity which held and maintained the park was of no moment to Beardsley. Prior to the advent of Home Rule by constitutional amendment, the settled rule in Connecticut was that "municipalities as political subdivisions of the state, created for public purposes and having their powers, rights and duties conferred and imposed by the state through the Legislature, are subject to its will and liable to have any such rights or duties modified or abolished by it, and not to be regarded as thereby being deprived of any vested rights." (citations omitted.)Sanger v. Bridgeport, 124 Conn. 183, 188, 198 A. 746 (1938), limited on other grounds, Hillier v. East Hartford, 167 Conn. 100, 355 A.2d 1
(1974). These principles were well settled in Beardsley's day. SeeState ex rel. Coe v. Fyler, 48 Conn. 145, 158 (1880). Indeed, at the time Beardsley executed these deeds, Article Third § 3 of the Constitution of the state of Connecticut contemplated the formation of a new town from one or more towns.[18] See also Gilpin v. Ansonia,68 Conn. 72, 80, 35 A. 777 (1896) ("alteration of the form from a borough to a city did not break the continuity of its existence."). Moreover, in holding and maintaining Beardsley Park, the city of Bridgeport never was "acting for itself, but as an administrative tribunal only, and authorized thereto by the state. . . ." Conners v. New Haven, 101 Conn. 191,194, 125 A. 375 (1924). "The control of public parks belongs primarily to the state. The authority which the common council or park commissioners of a city may exercise in the control and management of public parks is not derived from citizens of the municipality within the limits of which such parks are situated, but from the legislature. Such parks are held not for the sole use of the people of a particular municipality, but for the use of the general public which the legislature represents. Municipalities in controlling and managingsuch public parks act as governmental agencies, exercising an authoritydelegated by the state, and are always subject to legislative control."
(Emphasis added.) Hartford v. Maslen, 76 Conn. 599, 611, 57 A. 740
(1904). Given this inherent and extensive control by the state, this court holds that the transfer of the portions of Beardsley Park, other than the zoo, to the state of Connecticut, with or without consideration, does not activate the forfeiture and reversionary provisions in either of the Beardsley deeds.[19] Even if there is such a conveyance, there will be substantial compliance with the conditions in the deeds.
The transfer to the Connecticut Zoological Society, Inc. stands on different footing. That corporation is neither a political subdivision nor an administrative agency of the state or of the city. The 1878 deed CT Page 3727 from Beardsley expressly enjoined the city from any "attempt to deliver or convey" the property. The 1881 deed expressly requires that the parcels of land therein conveyed "be forever . . . held . . . by said city of Bridgeport . . . ." Dictionary definitions in the American Heritage Dictionary (1981), for the terms "deliver," "convey" and "held" include the following. "Deliver" means "[t]o put into another's possession or power; surrender; hand over." "Convey" means "[t]o transfer ownership of or title to." "Held," the past tense of hold, means "[t]o keep in one's possession; own. . . . to maintain control over. . . . to be the legal possessor of." Under the plain and ordinary meaning of the language of both the 1878 and 1881 deeds, the court holds that the transfer of the zoo property to the Connecticut Zoological Society, Inc. would activate the reversionary and forfeiture provisions of the two deeds.
 III
The plaintiffs also request that the court, pursuant to the equitable doctrine of deviation, enter an order transferring the Elton G. Rogers Fund from the Parks Department of the city of Bridgeport to the Connecticut Zoological Society, Inc. as substitute administrator and trustee. The plaintiffs' request is contingent upon the court's approval of the transfer of the zoo property in the 1878 and 1881 Beardsley deeds from the city of Bridgeport to the Connecticut Zoological Society, Inc. Since the court did not approve the plaintiffs' proposed transfer of the zoo property under the two Beardsley deeds, the court does not address the propriety of the plaintiffs' proposed transfer of the Elton Rogers Fund.
Judgment may enter for the plaintiffs only as to their request for a declaratory judgment under counts V and VII that the transfer of the non-zoo portions of Beardsley Park from the city of Bridgeport to the state for consideration to be applied to the city's bond indebtedness does not trigger the forfeiture and reversionary provisions in either of the Beardsley deeds. Judgment may enter for the defendants, denying the plaintiffs the requested relief, on all other counts.
BY THE COURT
Bruce L. Levin Judge of the Superior Court