LAFOND v. CITY OF DETROIT.

1. WILLS—BEQUEST INVOLVING RACIAL DISCRIMINATION—CONSTRUC-
   TION OF WILL—EQUALLY DIVIDED COURT.
   Decree construing provision of will giving the bulk of testatrix's
   estate for the establishment of a "playfield for white children"
   as void is affirmed by an equally divided court.

2. SAME—COURTS—JURISDICTION—RESIDENCE—PARTIES.
   Courts of county in which testatrix resided at time of her death
   had jurisdiction to probate will and construe it, hence refusal
   to allow prosecuting attorney of another county in which tes-
   tatrix had lived and in which city was located that was residu-
   ary legatee, to become a defendant, was not error.

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted April 9, 1959. (Docket No. 34, Calendar No.
47,781.) Decided October 12, 1959.

Bill by Doris Dormire LaFond, Phillip James Dor-
mire, Sr., and Phyllis M. Dormire Carless against
the City of Detroit, a municipal corporation, and Carl
L. Reagh, administrator with the will annexed of
the estate of Emma Katharine Sagendorph, deceased,
to construe residuary clause in will void. Decree for
plaintiffs. Defendant City of Detroit appeals. Af-
firmed by an equally divided court.

*Glassen, Parr & Rhead* (*R. F. Rhead,* of counsel),
for plaintiffs.

*Nathaniel H. Goldstick,* Corporation Counsel, and
*Andrew DiMaggio,* Assistant Corporation Counsel,
for defendant City of Detroit.

---

REFERENCES. FOR POINTS IN HEADNOTES
[1] 10 Am Jur, Charities § 81; 57 Am Jur, Wills § 148.
[2] 57 Am Jur, Wills § 766.

Kelly, J. (*for affirmance*).  Plaintiffs, as heirs of Emma Katharine Sagendorph, deceased (hereinafter referred to as deceased), on October 28, 1954, filed their bill of complaint requesting the circuit court of Ingham county to construe as void the residuary clause in deceased's will, which provided:

"The balance of my estate after deducting the above bequests is to be given to the city of Detroit, Wayne county, Michigan for a playfield for white children, and known as the 'Sagendorph Field'."

Defendant city of Detroit filed its answer (November 15, 1954) claiming plaintiffs should be denied relief because "the bequest made under said residuary clause was for an educational purpose and valid by reason of the provisions of PA 1915, No 280, being CL 1948, §§ 554.351–554.353 (Stat Ann 1953 Rev §§ 26.1191–26.1193), and by reason of the provisions of PA 1925, No 373, being CL 1948, §§ 554.381, 554.382 (Stat Ann 1953 Rev §§ 26.1201, 26.1202), and by reason of PA 1913, No 380, being CL 1948, § 123.871 (Stat Ann 1958 Rev § 5.3421), and by reason of the doctrine of cy pres in force in the State of Michigan, and for the further reason that the words in said residuary clause, to-wit, 'for white children' are merely precatory."

February 17, 1955, defendant city filed its motion to dismiss plaintiffs' bill of complaint "because the (Wayne county) prosecuting attorney has not been made a party defendant" and "because the court of chancery for the county of Wayne is the proper court having jurisdiction to construe the residuary clause in said will."

On July 14, 1955, Detroit's corporation counsel's memorandum to the common council and the resolution of the Detroit common council were filed.  The corporation counsel's memo to the common council alleged:  (1) That deceased left an estate of $32,-

830.11 and after payment of bequests in the will, plus claims and administration costs, there would be about $25,000 for the residuary legatee, the city of Detroit; (2) That "because of the onerous conditions imposed by the said testatrix in the residuary clause of her will, as aforesaid, it is legally necessary for your honorable body to determine by resolution, before the final hearing of said cause, whether the city accepts or rejects the aforesaid bequest."

The Detroit common council's resolution, unanimously adopted, stated:

"Resolved, that the city of Detroit, a municipal corporation, accept and it does hereby accept the bequest of Emma Katharine Sagendorph, deceased, as stated in the residuary clause of her will, heretofore admitted to probate in the Ingham county probate court, provided the court will construe the said residuary clause as giving the city of Detroit the right to make the playfield available to all children, without regard to race, color or creed, and be it further

"Resolved, that after payment of said bequest to the city, the parks and recreation commission be, and it is hereby authorized to provide a playfield for children in the city of Detroit, in accordance with the court's construction of said residuary clause, and to name such field 'Sagendorph Field.' "

November 23, 1956, the prosecuting attorney for the county of Wayne filed his petition for leave to intervene as party defendant, alleging that deceased's will (dated September 15, 1948) was executed while she was a resident of the city of Detroit and that PA 1915, No 280 (CL 1948, § 554.351 *et seq.* [Stat Ann 1953 Rev § 26.1191 *et seq.*]) and "all of the facts which can be reviewed at this time, indicate that it was the intention of the testatrix that jurisdiction be in the circuit court for the county of Wayne and accordingly, that your petitioner as pros-

ecuting attorney in and for said county, should represent the beneficiaries of this trust."

The prosecuting attorney's petition was denied. The city of Detroit then petitioned this Court for a writ of prohibition and mandamus, which we denied, and the Ingham county circuit court retained jurisdiction. On March 27, 1958, it filed its opinion. The following are excerpts therefrom:

"The city of Detroit in attempting to accept this bequest adopted a resolution by their common council in which they stated that they would not carry out the bequest, and establish a playfield for white children, but would establish a playground for all races. In the will of the deceased she requested that the terms of her will be 'carried out to the letter.' The resolution of the council of the city of Detroit expressly states that her wishes would not be carried out, but that they would accept the money and then do exactly contrary to the wishes of the deceased.
\*     \*     \*

"The bequest of the deceased is not indefinite nor uncertain, but is a very positive order. She states in her last will that she wanted a playfield established for white children. Nothing could be more positive or definite than her statement, but to carry out this bequest would be contrary to the laws of the State of Michigan, and the United States of America.
\*     \*     \*

"The words 'a playfield for white children' were 'words of command', and would not allow the city of Detroit to accept this bequest and then do exactly opposite from that commanded by the deceased.

"It is the claim of the defendants that the doctrine of 'cy pres' would apply in this case and would validate the bequest of the deceased. This court cannot find where this doctrine applies because such doctrine does not apply where it is impossible to carry out the object of the bequest. In this cause as hereinbefore stated, in order to carry out the bequest of the

deceased it would be necessary to violate the laws of this State and of this country."

Appellant submits 3 questions. The first challenges the court's jurisdiction; the second question deals with the court's refusal to recognize the prosecuting attorney of Wayne county as "a necessary party at the trial;" and because the third question is the major one and most important, it shall be considered first in this opinion. It reads as follows:

"Did racial restriction—white—in residuary trust bequest to appellant city of Detroit in the will of Emma Katharine Sagendorph, deceased, limiting availability of playfield to white children, render entire bequest void as against public policy, or was the racial restriction therein void and the bequest otherwise legal thus making playfield available to all the children?"

We are considering a gift of the bulk of deceased's estate to the city, and deceased's express wish must be respected and carried out irrespective of this Court's desire to aid and encourage the creation of city playgrounds for children of all races and color. The words in the will commanding that the will "be carried out to the letter" cannot be forgotten or disregarded. Deceased expressed in unambiguous language that she was making a bequest for the establishment of "a playfield for white children."

The city of Detroit by its corporation counsel's memorandum to the common council (prior to the adoption of the council's resolution) disclosed it did not consider the words "a playfield for white children" as unimportant and incidental, but characterized these words as creating "onerous conditions imposed by the said testatrix."

I disagree that by providing for a playground for white children the aged testatrix, who desired to create a memorial for her deceased husband, ex-

pressed "hatred for children of all races except white" or that her "intentions were more of a striking back at the Negro population than as a charitable effort." There is nothing in the will nor in the record that sustains a conclusion that she made the bequest because she wanted to make certain her legal heirs would not share in her estate.

Justice EDWARDS, endeavoring to apply the cy pres doctrine, quotes the American Law Institute's Restatement of Trusts to the effect that where the gift or bequest is impractical to carry out, or illegal, and where it is manifest there was "a more general intention to devote the property to charitable purposes," "the doctrine of cy pres is applicable unless" there is "manifested an intention that the property should be applied solely to the purpose." There is nothing in the will nor in the record disclosing a more general purpose than the specified purpose—a playfield for white children—and there is nothing in the will or record which in the slightest way indicates deceased desired the money to be applied to any other purpose than "a playfield for white children."

The cy pres doctrine is used to aid the court in carrying out the true intention of the donor and cannot be used for the purpose of eliminating the unambiguous words found in deceased's will.

The general rule govering the cy pres doctrine is clearly set forth in 74 ALR 671, as follows:

"It not infrequently occurs that the method of executing a charitable trust defined by the terms of the instrument creating it is impracticable or illegal. In those jurisdictions wherein the cy pres doctrine is recognized, it is quite generally held in such circumstances that, if the instrument indicates a general intention or dominant purpose on the part of the donor that the property is to be devoted to charitable purposes regardless of the peculiar method of execution, the cy pres doctrine will be applied. Numer-

ous authorities support this rule and its converse,— that where the charitable purpose is limited to a particular object or to a particular institution, and no general charitable intent is manifest from the instrument, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, the doctrine of cy pres does not apply, and in the absence of any limitation over, or other provision, the legacy lapses."

Appellant calls attention to PA 1915, No 280, § 1 (CL 1948, § 554.351 [Stat Ann 1953 Rev § 26.1191]), which provides:

"No gift, grant, bequest or devise  *  *  *  to religious, educational, charitable or benevolent uses *  *  *  which shall in other respects be valid under the laws of this State, shall be invalid by reason of the indefiniteness or uncertainty of the object of such trust or of the persons designated as the beneficiaries thereunder in the instrument creating the same, nor by reason of the same contravening any statute or rule against perpetuities."

This statute does not apply because we do not have an "indefiniteness or uncertainty of the object of such trust" or a bequest contrary to "any statute or rule against perpetuities."

We agree with the trial court "for white children" are words of command and the cy pres doctrine cannot be invoked to validate the residuary bequest.

The will does not indicate a general intention to provide for a general charitable purpose rather than for a particular designated object. The cy pres doctrine is used to aid the court in carrying out the true intention of the donor and cannot be used for the purpose of eliminating the unambiguous words found in deceased's will. See 74 ALR 671, 678.

Subsequent to drawing the will in Detroit, deceased became a resident of Webberville, Ingham county, where she resided at the time of her death,

and her will was admitted to probate in Ingham county.

We do not agree with appellant's contention that the circuit court of Ingham county lacked jurisdiction, or that error was committed in refusing to allow the prosecuting attorney of Wayne county to be made a party defendant.

Affirmed. No costs, a public question being involved.

Dethmers, C. J., and Carr and Kavanagh, JJ., concurred with Kelly, J.

Edwards, J. (*for reversal*). The basic question in this case is whether an old lady, in setting up a memorial trust in honor of her deceased husband, had as her basic intent a charitable purpose toward the children of the city of Detroit, or an expression of hatred for children of all races except white.

The words she used were:

"The balance of my estate after deducting the above bequests is to be given to the city of Detroit, Wayne county, Michigan for a playfield for white children, and known as the 'Sagendorph Field.'"

All parties to this litigation concur that the 14th Amendment to the Constitution of the United States forbids the city of Detroit from maintaining an exclusively white playground if, indeed, the term "exclusive" be deemed a part of Mrs. Sagendorph's intention.

The alternatives before this Court are (1) to give such legal effect to Mrs. Sagendorph's bequest as may be consistent with the Constitution of the United States in the providing of a playground for white and all other children of the city of Detroit; or (2) to defeat the charitable trust in its entirety and have the trust *res* distributed to heirs to whom it is patent

Mrs. Sagendorph did not intend to leave this money.

Charitable bequests have been a source of difficulty and concern for all of the past history of the courts. And under a doctrine broadly, and perhaps loosely, called the cy pres doctrine,* the courts have come to a general rule requiring liberal construction of charitable trusts to preserve as nearly as may be the charitable purposes of the donor in the event of some ambiguity, or some impossible or illegal condition. *In re Estate of Lundquist,* 193 Minn 474 (259 NW 9); *Bruce* v. *Maxwell,* 311 Ill 479 (143 NE 82); *Jackson* v. *Phillips,* 14 Allen (96 Mass) 539.

Michigan has long recognized that a memorial bequest to a municipality for playground purposes is a charitable bequest. *Greenman* v. *Phillips,* 241 Mich 464. Michigan has also recognized the cy pres doctrine in case law. *Gifford* v. *First National Bank of Menominee,* 285 Mich 58; *In re Hannan's Estate,* 227 Mich 569, 577.

The essence of the cy pres doctrine has been recognized by legislative enactment:

> "*No gift, grant, bequest or devise,* whether in trust or otherwise to religious, educational, charitable or benevolent uses, or for the purpose of providing for the care or maintenance of any part of any cemetery, public or private, or anything therein contained which shall in other respects be valid under the laws of this State, *shall be invalid by reason of the in-*

---

* At common law in England, the crown exercised its prerogative power to apply funds given for a charitable, but illegal, purpose to some valid charitable purpose without regard for the settlor's intention. Property otherwise given for a particular charitable purpose which became incapable of fulfillment was directed by the chancellor under the doctrine of cy pres to another charitable purpose which fell within the general charitable intention of the settlor.

The prerogative power, of course, does not exist in this country. The cy pres doctrine applied in the United States is a rule of judicial construction designed to approximate as closely as possible the desires of the settlor. *Jackson* v. *Phillips* (1867), 14 Allen (96 Mass) 539, 578–581; 2 Restatement, Trusts 2d, § 399h, p 301; 10 Am Jur, Charities, § 123, p 676.

*definiteness or uncertainty of the object of such trust
or of the persons designated as the beneficiaries
thereunder in the instrument creating the same,* nor
by reason of the same contravening any statute or
rule against perpetuities." CL 1948, § 554.351 (Stat
Ann 1953 Rev § 26.1191).

"The court of chancery for the proper county shall
have jurisdiction and control over the gifts, grants,
bequests and devises in all cases provided for by
section 1 of this act. *Every such trust shall be
liberally construed by such court so that the inten-
tions of the creator thereof shall be carried out
whenever possible.*" CL 1948, § 554.352 (Stat Ann
1953 Rev § 26.1192). (Emphasis supplied.)

In addition, the legislature has provided author-
ity to cities to receive such bequests. CL 1948,
§ 123.871 (Stat Ann 1958 Rev § 5.3421).

We believe the italicized statutory language was
designed to preserve charitable bequests from in-
validity in just such a situation of uncertainty per-
taining to object or beneficiaries as is here presented.
*In re Jones' Estate,* 334 Mich 392.

The American Law Institute's Restatement of
Trusts provides the following general rule as to the
cy pres doctrine:

"If property is given in trust to be applied to a
particular charitable purpose, and it is or becomes
impossible or impracticable or illegal to carry out
the particular purpose, and if the settlor manifested
a more general intention to devote the property to
charitable purposes, the trust will not fail but the
court will direct the application of the property to
some charitable purpose which falls within the gen-
eral charitable intention of the settlor." 2 Restate-
ment, Trusts 2d, § 399, p 297.

Specifically as to an illegal condition, the Restate-
ment continues:

"A disposition for charitable purposes may fail, in whole or in part, either at the outset or subsequently, because the purposes or some of them are or become illegal. In such a case the doctrine of cy pres is applicable unless the settlor manifested an intention that the property should be applied solely to the purpose which is or has become illegal." 2 Restatement, Trusts 2d, § 399n, p 305.

As to testatrix' intentions, appellees' brief has stated their position vividly: "Emma Katharine Sagendorph's intentions were more of a striking back at the Negro population than as a charitable effort." We entertain no doubt that testatrix' language implies some prejudice. And we note also that she desired the entire will "carried out to the letter."

But we do not find in this will any provision for gift over in the event of failure of the condition referred to. And forfeiture because of restrictive conditions attached to grants or conveyances of land is not generally favored. *Conrad* v. *Long,* 33 Mich. 78; *Adams* v. *First Baptist Church of St. Charles,* 148 Mich 140 (11 LRA NS 509, 12 Ann Cas 224).

See, also, CL 1948, § 554.46 (Stat Ann 1957 Rev § 26.46).

Nor do we find any impelling reason to construe the words of the testatrix so as to hold that her sole purpose was one of exclusion. This will on its face bestows the bulk of an old lady's estate upon the city where she and her husband spent their lives. It provides for an obvious charitable purpose—a playground. It provides for the playground to carry the family name.

It would take clearer and more dramatic language than we find in this will for us to hold that testatrix' real intention was one of revenge rather than one of charity. Even if the word "white" contained in her bequest be thought of as a word of exclusion (and the testatrix did not so require), we believe the basic

purpose of the bequest is patently that of a memorial to her husband and herself to perpetuate their memory in a playground for children in the city of Detroit.

The trustee, city of Detroit, has by resolution effectively provided for the carrying out of the purpose of the bequest, excluding, of course, any condition which would violate the United States Constitution. This fulfills her intention as nearly as may be.

We note that appellees cite the *Girard College Cases* to us (*Girard Will Case,* 386 Pa 548 [127 A2d 287]; *Pennsylvania* v. *Board of Directors of City Trusts of the City of Philadelphia,* 353 US 230 [77 S Ct 806, 1 L ed 2d 792]; *Girard College Trusteeship,* 391 Pa 434 [138 A2d 844], appeal dismissed and certiorari denied, 357 US 570 [78 S Ct 1383, 2 L ed 2d 1546]).* For our present facts, the most significant thing about these cases is that no court held the bequest to the college invalid.

As to the other questions presented, we concur with Mr. Justice Kelly's opinion.

Reversed for the entrance of a decree giving effect to the bequest in accordance with this opinion. Costs to appellant.

Smith, Black, and Voelker, JJ., concurred with Edwards, J.

---

* For a discussion of the impact of these cases on charitable trusts generally, see 66 Yale LJ 979. Clark's Charitable Trusts, the Fourteenth Amendment and the Will of Stephen Girard.