502 So.2d 659 (1987)
Charles A. TINNIN, Sr., Williard E. Tinnin, Edith Tinnin Simmons, and Miriam Tinnin Coleman
v.
FIRST UNITED BANK OF MISSISSIPPI, Trustee of the T.H. Hobgood and Allie R. Hobgood Educational Trust.
No. 56051.
Supreme Court of Mississippi.
February 11, 1987.
*661 William C. Hammack, E. Gregory Snowden, Bourdeaux & Jones, Meridian, for appellants.
Robert M. Dreyfus, Jr., Goldman, Dreyfus & Primeaux, Meridian, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This case tests our confidence in ourselves as a free pluralistic people. It also tests our fidelity to the rule of law.
On the one hand we are asked to decree that a charitable educational trust be administered in a racially nondiscriminatory manner, notwithstanding the testator's unmistakable language that the beneficiaries be "worthy" college students "who are of the caucassian [sic] race and ... none other."
On the other hand, the testator's heirs at law ask that we employ the law generally applicable to void or lapsed bequests and give them the trust assets which amount to almost $300,000.00, as the federal constitution prohibits state judicial enforcement of such a racially restrictive provision.
We find the holographic will before us, properly understood, ambiguous. Because the court below proceeded without regard to extrinsic evidence, we cannot say with confidence that its decision striking the racially restrictive clause and otherwise upholding the trust accords the will its most just and reasonable reading consistent with the general plan divined from the will and our positive law. We reverse and remand.

II.
Allan R. Hobgood during his time on this earth was an only child and a bachelor. Hobgood died on January 31, 1968, in Lauderdale County, leaving a seven page holographic will he had written in December of 1962. Among other provisions,[1] the will created the T.H. Hobgood and Allie R. Hobgood Educational Trust, a testamentary charitable trust designed to provide financial aid to college students. The will expressly provided:
After the death of my mother[[2]] my trustees shall, in their discretion, make loans to students of a state college or university of and operated by the State of Mississippi, who are found worthy and who are of the Caucassion [sic] race and to none other.
Directions were then given regarding the amount that might be loaned to any one student, rates of interest and terms of repayment, and the like.
*662 On April 22, 1967, Hobgood made and executed a holographic codicil[3] to his will, not affecting the trust here in controversy except that its terms are reinforced:
All of my original will not changed by this codicil are re-adopted and shall stand as amended by this codicil.
After Hobgood's death and probate of his will, the named trustees, Attorney E.L. Snow and First Baptist Church of Meridian, declined to serve. The First United Bank of Mississippi (hereinafter "Bank"), Defendant below and Appellee here, then stepped forward and notified the Chancery Court of Lauderdale County that it would serve as trustee and was so appointed on June 27, 1969. The court made no mention in the appointment order of what the Bank should do about the racially restrictive provisions in the trust.
On July 29, 1969, the Bank, as trustee, filed with the Internal Revenue Service a tax exemption application for the trust and there declared Bank's intention to make loans from the trust to eligible beneficiaries without regard to "race, color or creed." The Bank advised neither the Chancery Court nor any surviving relative of Allan Hobgood of its decision in this regard. Apparently in 1973 the Bank considered the propriety of its determined course of administration of the trust, but no court approval was ever sought.
The record reflects an August 4, 1970, court order construing the will, sought by the bank on February 25, 1970, a year after receiving the IRS exemption. This order does not address the matter of the racially restrictive beneficiary clause, nor did the Bank ask the court to do so. In its periodic accountings filed with the Chancery Court, the Bank never disclosed its nondiscrimination policy and practice.
Allan R. Hobgood left surviving him no spouse, no children and no descendants of children. His parents, including his mother who is named in the will, and grandparents had predeceased him. All of his full blood uncles and aunts had predeceased him, but he was survived by Lucille Hamilton Hobgood Tinnin, an aunt of the half blood, and by first cousins of the whole blood.
Charles A. Tinnin, Sr., Willard E. Tinnin, Edith Tinnin Simmons, and Miriam Tinnin Coleman (hereinafter collectively "Tinnins"), Plaintiffs below and Appellants here, are four children of Eddie Earl Tinnin and Hobgood's half-aunt, Lucille Hamilton Hobgood Tinnin, who was the sole heir at law of Allan Hobgood. These four Appellants are devisees of their late father, Eddie Earl Tinnin, who had been the sole beneficiary under Lucille Hamilton Hobgood Tinnin's will. See Appendix. The parties have stipulated that, should the trust fail, the trust assets should be delivered to these four parties. On December 31, 1982, the assets of the trust amounted to $292,796.49.
The Tinnins only recently became aware of the situation at bar. On November 17, 1983, they commenced the present action in the Chancery Court of Lauderdale County. The Tinnins argued that the trust must terminate and the assets be distributed among them because the Bank's administration of the trust is contrary to the terms of Hobgood's will.
On October 4, 1984, the Chancery Court released its opinion holding that
the unlawful racial restriction, being only incidental, not integral, to the primary objective of the testator, must be set aside to enable the testator's principal purpose to be carried out.
Relying upon the blended powers of cy pres and equitable approximation, the Chancery Court "sustain[ed] the trust, minus the discriminatory provision." On October 15, 1984, the Court entered final judgment dismissing the Tinnins' complaint. This appeal has followed.

III.
One of the great chapters in the evolution of the rights of man records the winning *663 of the right of testation, the power by will to control from the grave what becomes of one's property. The power derives from legislative grant. Miss. Code Ann. § 91-5-1 (1972). It is exercised by the competent adult as he sees fit, subject to few limitations,[4] and where the testator has acted in conformity with our empowering statutory rules, his will is valid. It becomes in theory almost sacred and in practice judicially enforceable, notwithstanding the testator's death and public or private inconvenience.
A will is privately made law. Like all law, wills are inevitably open textured to one degree or another, notwithstanding the most skillful draftsmanship. Questions of meaning and effect abound. This is more often so with holographic wills. The ultimate authority for the construction of a will lies in the judicial department of the state. The exercise of that authority from time to time requires enforcement of directives not in so many words a part of an otherwise valid will, a task we perform according to certain familiar canons of construction.
First and foremost, having in mind that the whole idea is to allow the testator to have his way regarding the disposition of his property, we seek and where possible give effect to the testator's intent. See In re Estate of Granberry, 310 So.2d 708, 711 (Miss. 1975); Hart v. First National Bank of Jackson, 233 Miss. 766, 103 So.2d 406, 409 (1958). As an example of the emphasis we place upon the testator's intent, Deposit Guaranty National Bank v. First National Bank of Jackson, 352 So.2d 1324, 1326-27 (Miss. 1977) states:
The paramount and controlling consideration is to ascertain and give effect to the intention of the testator. In arriving at this intention, the court is required to consider the entire instrument, sometimes said "from the four corners of the instrument." Where the instrument is susceptible of more than one construction, it is the duty of the court to adopt that construction which is most consistent with the intention of the testator.
We have recently reiterated that
We are not at liberty to infer an intent different from that clearly shown by the language of the will despite the Court's favorable disposition toward charitable gifts.
Johnson v. Board of Trustees of Mississippi Annual Conference of United Methodist Church, 492 So.2d 269, 276 (Miss. 1986).
The surest guide to testamentary intent is the wording employed by the maker of the will. Indeed, we have authority to give effect to a testator's intent only where that intent has received some form of expression in the will. Byrd v. Wallis, 182 Miss. 499, 516, 181 So. 727, 732 (1938); Weems, Mississippi Wills and Estates, § 9-3, p. 286 (1983).
Also of importance here is the presumption against intestacy. Richardson v. Browning, 192 So.2d 692, 694 (Miss. 1966). The fact that Allan Hobgood made a will in 1962 and executed a codicil in 1967 are powerful evidence of his intention that his estate not pass according to the laws of descent and distribution. This is why we construe wills so as to avoid intestacy where that may reasonably be done, Cooper v. Simmons, 237 Miss. 630, 636, 116 So.2d 215, 218 (1959); Richmond v. Bass, 202 Miss. 386, 392, 32 So.2d 136, 137 (1947), which brings us to the first issue tendered by the Tinnins. That issue regards the extent and content of the judicial power to reform or supplement the terms of a testamentary charitable trust, under the doctrines of cy pres, equitable approximation or whatever.
These matters, debated at length by the parties in their briefs, have been drawn into focus by our recent decision in Estate *664 of Bunch v. Heirs of Bunch, 485 So.2d 284 (Miss. 1986) where we first said
The extent to which the cy pres doctrine may have booked passage on the Mayflower is a matter that need not detain us. Whatever may once have been the law in this state, it is much too late to question the authority and responsibility of this Court to amend or supplement the terms of a will  whether its devise be private or charitable in nature  where such is necessary to effect the testator's dominant intent and avoid a clearly unintended consequence.
485 So.2d at 285.
Thereafter, we said in Bunch
In the context of charitable testamentary trusts, our law has heretofore evolved to the point where we may recognize as a part of the positive law of this state, the rule that: where the will shows the testator's general intention that his or her property be applied to a given charitable purpose, the court can and generally must make such supplementary and administrative provisions as may be necessary to effect the testator's purpose. [citations omitted] As the cases cited suggest, there has been much debate regarding the nature and historical source of this power. See National Bank of Greece v. Savarika, 167 Miss. 571, 589-91, 148 So. 649, 653-55 (1933). The debate misses the mark. That the power exists and has been recognized in our law is what counts. The labels fade into insignificance in the face of the content of the power, a power which, if anything, we will employ with greater solicitude in the case of a charitable trust than for a private trust.
485 So.2d at 286.
Our earlier case, In re Estate of Hall, 193 So.2d 587, 591-92 (Miss. 1967) was to like effect. See also Carter v. Berry, 243 Miss. 321, 370, 140 So.2d 843, 852 (1962), as noted in 76 Harv.L.Rev. 1308 (1963).
In Bunch we directed formulation in the chancery court on remand of "supplementary and administrative provisions" which merely added to what the testator had written. The judicial authority extends beyond that. In appropriate cases we may order modification or excision of testamentary terms incapable of performance or enforcement for whatever reason. Carter v. Berry, 243 Miss. at 370, 140 So.2d at 852. Such authority is exercised with discretion and restraint. Unlike the preacher, the probate judge should arrogate to himself no power to make the testator nobler in death than his will reflects him to have been in life. See Connecticut Bank & Trust Company v. Johnson Memorial Hospital, 30 Conn. Supp. 1, 294 A.2d 586, 592-93 (1972). Ordinarily, our authority is correctly exercised when the strings the testator tied to his property are respected, not cut.
As important and central as we regard our duty to implement the testator's intent, even to the point of supplementation or modification in aid thereof, the coin has another side. The testator's right to make his will as he pleases is not unentailed. Our encounter with one of these entailments adds to the difficulty of today's case.
We have often said the testator's intention is given effect only so long as that intent "does not violate the law or public policy." Dealy v. Keatts, 157 Miss. 412, 418, 128 So. 268, 270 (1930); Matter of Griffin's Will, 411 So.2d 766, 767 (Miss. 1982). For reasons of social policy, our law has come to provide that one may not wholly disinherit one's spouse, that one may not attempt purchase of a ticket to heaven by leaving his entire estate to the church, that one may not control ownership of property beyond life in being plus twenty-one years.[5] Whatever may once have been the attitudes of many, it is much too late to doubt that a major social policy of our society is that entitlement one is eligible to enjoy on one's merits shall not be denied by reason of one's race, color or creed. This policy is a part of our organic law by virtue of the Equal Protection Clause. There are limitations *665 upon our authority to enforce racially discriminating testamentary trusts, as will be explained presently.
There is a backdrop. Where a testamentary devise fails, because it "violates law or social policy" or for whatever reason, and where the will's residuary clause fails to pick it up, again for whatever reason, the force of the private law is thought spent. Our public law provides for the descent and distribution of property not effectively devised by will. See Miss. Code Ann. §§ 91-1-1, et seq., (1972). At death one's property passes according to one's valid will, subject to the carefully limited judicial authority to supplement, reform and otherwise construe that will, then only to the extent that the will so construed fails according to the statute of descent and distribution. This is what is meant by our many cases, arising in differing contexts, each holding that a particular devise lapses and therefore passes to the testator's heirs at law as though he had died intestate. Moffett v. Howard, 392 So.2d 509, 512 (Miss. 1981); Hays v. Cole, 221 Miss. 459, 466, 73 So.2d 258, 260 (1954); National Bank of Greece v. Savarika, 167 Miss. 571, 597, 148 So. 649, 656 (1933); Lewis v. Lusk, 35 Miss. 401, 423 (1858); cf. Bond v. Dukate, 118 Miss. 516, 519-20, 79 So. 86, 87 (1918).
Our law in sum provides that the court, as here asked to construe a will, supplement it by the statutes on descent and distribution  thus adding the ultimate residuary clause  and by such administrative provisions or modifications as are authorized and necessary, see Estate of Bunch, supra, Carter v. Berry, supra, and then restrict it by the various limitations our public law has imposed upon testamentary power. The composite document thus constructed is then construed as a whole with each part, each phrase, each word given effect, if that be possible. Malone v. Malone, 379 So.2d 926, 929 (Miss. 1980); First National Bank of Laurel v. Commercial National Bank & Trust Co., 247 Miss. 677, 682, 157 So.2d 502, 504 (1963). It is this principle of reconstruction to which we must resort in our quest for the legally appropriate interpretation of Allan Hobgood's will.

IV.
Without doubt, the T.H. Hobgood and Allie R. Hobgood Educational Trust is a charitable trust as that legal vessel has been defined in our law. See In re Estate of Hall, 193 So.2d 587, 591-92 (Miss. 1967). To be such the gift or devise must disclose a true "charitable" nature. Moreover, the gift or devise must be capable of administration and control by the court. In determining charitable nature, advancement of education and relief of poverty have been noted as two favorite subjects of charitable trusts. Estate of Hall, 193 So.2d at 591. Perhaps the most important factor is borrowed from Scott On Trusts, Vol. 4 (2d ed. 1956) § 364:
In the case of a charitable trust the beneficial interest is not given to individual beneficiaries but the property is devoted to the accomplishment of purposes which are beneficial or supposed to be beneficial to the community, and the persons who are to receive benefits from the trust need not be designated.
193 So.2d at 591-92. See also Matter of Estate of Wilson, 59 N.Y.2d 461, 465 N.Y.S.2d 900, 904, 452 N.E.2d 1228, 1232 (1983).
None of this carries us far, for our question concerns, not the nature or type of testamentary trust before us, but whether the will of Allan Hobgood, reconstructed according to the principles described in Section III above, should be held to have established a non-discriminatory educational trust or, failing that, to direct distribution of the residuum of Hobgood's estate to the Tinnins as his heirs at law.
The Tinnins argue that the racial exclusion was an integral part of the testator's creative scheme and, as it may not be judicially enforced, the trust must fail. The Bank, on the other hand, as trustee, argues that the Court should employ its equitable powers, cy pres variety or otherwise, and strike the racial exclusion from the trust, also for the reason that it may not be judicially enforced. Indeed, all parties conceded *666 at oral argument that judicial enforcement of the racially discriminatory features of the trust is not an available option. It is helpful to consider briefly why and to what extent this is so.
The seminal case is Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). There the Court found an equal protection violation in judicial enforcement of a private covenant that prohibited the sale of affected properties to black persons. More specifically, Shelley held the action of state courts ordering enforcement of such racially restrictive covenants was state action within the meaning and contemplation of the Fourteenth Amendment. 334 U.S. at 14-18, 68 S.Ct. at 842-44. See also, Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).
By way of contrast, the United States Constitution erects no barrier against purely private conduct, however discriminating or offensive.[6]Evans v. Abney, 396 U.S. 435, 445-47, 90 S.Ct. 628, 633-34, 24 L.Ed.2d 634, 644-45 (1970); Shelley v. Kraemer, 334 U.S. at 13, 68 S.Ct. at 842. Had the Bank sought to administer the trust adhering to the racial restrictions thereof, sans IRS exemption status, of course, and without reliance upon any arm of the state in aid of enforcement thereof, the Fourteenth Amendment may not have been offended.
Assuming nonenforceability of the racial exclusion, what law governs our choice between excision of the offensive restriction or, at the other extreme, declaring the charitable bequest void so that the property passes to those who would take under the statute of descent and distribution?
We find guidance in Evans v. Abney, supra. Evans refused to disturb Georgia's employment of its long-standing and racially neutral law of trusts to decree termination of a charitable trust in the context of the unenforceability of the testator's clearly expressed racially discriminatory enjoyment clause. Holding that the question is one of state law to which the Fourteenth Amendment does not speak, Evans expressly
reaffirms the traditional role of the States in determining whether or not to apply their cy pres doctrines to particular trusts. Nothing we have said here prevents a state court from applying its cy pres rule in a case where the Georgia court, for example, might not apply its rule.
396 U.S. at 447, 24 L.Ed.2d at 645.

V.
By reason of this state's racially neutral and long standing law of wills and trusts, we would give effect to a clause in a testamentary instrument which provided, for example, for a charitable, educational trust
for worthy college students who are of the Caucasian race and none others; provided, however, that, if for any reason the aforesaid racial restriction is violated or held unenforceable, I direct that all assets then held by my trustee be delivered to my heirs at law.
This view is the consequence of the existence in our law of the power of testation. Such a testamentary directive would vest rights persons might claim and judicially enforce no matter how inconvenient and offensive to others. See In re Brown, 478 So.2d 1033, 1036-37 (Miss. 1985).
We have no such will before us. It is thus incorrect to ask, in the context of *667 today's case, whether Allan Hobgood might have prevented any of his money from going to black college students, if only he had expressed clearly his intent in that regard in his will. Of course, he could have done that. Our question is, given the options of administration of the trust on a non-discriminatory basis or dismantling the trust and delivery of its assets to the Tinnins, which would Hobgood have preferred? Our polestar consideration, as always, is the intent of the testator, the right our law has given each competent adult to direct from the grave the disposition of his worldly goods.
We have never considered the sort of question before us today. The will in Bunch, it should be noted, contained arguably impermissible restrictions upon the class of beneficiaries, to-wit:
I request if there is any cash left it will go to help one or two young men through medical school white and single. ... [Emphasis supplied]
Bunch, 485 So.2d at 284.
Our Bunch opinion did not address the effect of these restrictions, as the point was not raised. Bunch left open the question here for adjudication.
Although today's question is one of first impression in this state, it has been decided often and variously elsewhere  in varying factual contexts, of course. Most famous is the Girard College case, the subject of much litigation, finally resolved in Pennsylvania v. Brown 392 F.2d 120 (3d Cir.1968). A will which provided for an educational institution for "poor male white orphan children" was modified through cy pres power to include all poor male orphans regardless of race.
Other similar cases abound. In Wachovia Bank & Trust Co., N.A. v. Buchanan, 346 F. Supp. 665 (D.C. 1972) the testator's instruction was to provide scholarships "to white boys and girls who reside in Alamance County." Finding a dominant general charitable intent, the court deleted the racial feature and thus preserved the charitable trust. In United States v. Hughes Memorial Home, 396 F. Supp. 544, 547 n. 2 (W.D.Va. 1975), a will establishing an orphanage "for the white children of the states of Virginia and North Carolina" was similarly altered; the racial restriction was found to be incidental to the main purpose of the trust. In Trammell v. Elliott, 230 Ga. 841, 199 S.E.2d 194, 197 (1973) a testator set aside a scholarship "for benefit of deserving poor white boys and girls;" the funds were applied free of the restriction under the doctrine of cy pres. In Bank of Delaware v. Buckson, 255 A.2d 710, 713 (Del. Ch. 1969) a testator bequeathed property in trust for scholarships and provided that applications "be made by white youths or young men residing in the city of Wilmington." The unenforceable racial restriction was deleted. In the case of In re Will of Potter, 275 A.2d 574, 576 (Del. Ch. 1970) the testator had provided that his estate be used "for the use, support, maintenance and education of the poor white citizens of Kent County generally." Because the state was involved, cy pres power was used to eliminate the racial restriction. Finally, in Wooten v. Fitz-Gerald, 440 S.W.2d 719, 722 (Tex.Civ.App. 1969) a provision for "a home for aged white men" was altered through cy pres power to include all races.
On the other hand, we are impressed by the force of Evans v. Newton, 221 Ga. 870, 148 S.E.2d 329 (1966), affirmed sub nom. Evans v. Abney, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970), wherein the Georgia Supreme Court held that the trust which provided the for-whites-only Baconsfield Park in Macon must fail; the doctrine of cy pres, unquestionably a part of Georgia law, could not be applied so as to continue the trust by simply removing restrictive racial provisions. The Georgia Supreme Court made no attempt at second guessing the expressed racially exclusive intent of the testator, the late U.S. Senator Augustus O. Bacon, who designated that the "private" park established as his devise be restricted to whites only.
The Supreme Court of Michigan faced a similar situation in La Fond v. City of Detroit, 357 Mich. 362, 98 N.W.2d 530 *668 (1959). In La Fond, a testatrix had provided in her will as follows:
The balance of my estate after deducting the above bequests is to be given to the city of Detroit, Wayne county, Michigan for a playfield for white children, and known as the "Sagendorph Field".
357 Mich. at 363, 98 N.W.2d at 530. The estate's heirs sought to void the bequest, but the City defended by urging the court to apply the doctrine of cy pres, arguing that the words "for white children" were not integral, but "merely precatory." 357 Mich. at 363, 98 N.W.2d at 531. Much like the Bank in the instant case, the city council of Detroit attempted to accept the gift while denying the conditions under which it was given.
In affirming the trial court's decision invalidating the bequest, the Supreme Court of Michigan expressly found:
We agree with the trial court "for white children" are words of command and the cy pres doctrine cannot be invoked to validate the residuary bequest.
The will does not indicate a general intention to provide for a general charitable purpose rather than for a particular designated object. The cy pres doctrine is used to aid the court in carrying out the true intention of the donor and cannot be used for the purpose of eliminating the unambiguous words found in deceased's will.
357 Mich. at 368, 98 N.W.2d at 533. This Michigan decision is in accord with the views of the Supreme Court of Iowa which has opined:
While charitable trusts are favored by the law, courts may not ignore the testator's intent in order to give effect to doubtful trust provisions by invoking the doctrine of cy pres. Cy pres is simply a liberal rule of construction used to carry out, not defeat, the testator's intent.
Simmons v. Parsons College, 256 N.W.2d 225, 227 (Iowa 1977).
In the end these cases boil down to a question of whether the court considered the unenforceable racial exclusion "incidental" or "integral" to the testator's purpose. This is the approach of the court below in today's case, its ultimate conclusion being that the racial restriction in Allan Hobgood's will was "only incidental, not integral" and thus "must be set aside." But labels so subjective are of little use, as the judicial eyesight varies widely. Our gaze is upon the choice between two options, each of which bears features we are confident Hobgood did not intend, in the context of which efforts at fitting the racially restrictive language of his will under labels such as "incidental" or "integral" seem vain.

VI.
The answer to today's dilemma must be found within the context of our general rules regarding will construction recited and discussed in Section III above. His mother having predeceased him, Allan Hobgood's reconstructed will communicates several unmistakable themes. The bulk of his estate was to be used to provide financial aid for college students. The money was to be made available in relatively small loans to be repaid within certain time limitations following graduation. Only students attending state supported colleges and universities in Mississippi were eligible. And, these loans were to be made to "worthy" students "of the Caucassion [sic] race and to none other."
We will never know what Allan Hobgood would have preferred to do with his money if he had known that no court would enforce his wish that his money be loaned exclusively to white students. The language he employed leaves no doubt that he did not want any of his money to be loaned to non-whites. Disingenuity attends the suggestion that the racially exclusive language of the will was identical or an after-thought. Given the historical context of the writing of the will  the racial turbulence of the 1960's  it is difficult to hold the words "Caucassion [sic] race and to none other" idly inserted.
Recognition of the unmistakable meaning of this clause, however, leaves us far *669 short of solution to today's construction riddle. The Tinnins' gaze has been so focused upon the tree they have found to their liking that they have given us little help in understanding the complex forest that is Allan Hobgood's reconstructed will. The Chancery Court recognized that the racially restrictive clause should not be viewed in isolation but its world also was too small. That Court looked at the racially restrictive clause and asked whether it was incidental or integral. The Court should have directed its attention to the alternative dispositions argued for and sought a just and reasonable disposition of Allan Hobgood's will as consistent as may be decreed by reference to the general plan reflected by his reconstructed will. See Mississippi School for Blind v. Armstrong, 216 Miss. 348, 356-57, 62 So.2d 369, 371-72 (1953); Cross v. O'Cavanagh, 198 Miss. 137, 147, 21 So.2d 473, 474 (1945). More precisely, the alternatives below and here are (a) striking the racially restrictive clause and continuing the trust and (b) causing the trust to fail and the property to be distributed to the Tinnins, the testator's heirs at law. We know for a fact that Allan Hobgood did not wish either of these alternatives. The question is which is less offensive the general plan of his reconstructed will.
The point takes on color in the context of the fact that Lucille Hamilton Hobgood Tinnin, Allan's aunt of the half blood (See Appendix), was not mentioned in his will. Indeed, when the will was made, Allan's mother appears to have been his sole heir at law, so that there is no reason for him to have thought of the possibility that Aunt Lucille would share in his estate, much less that her four children might take it all. While it is true that we construe wills favorably to those who would take under the laws of descent and distribution, unless the testator has manifest an intent to the contrary, Patterson v. Patterson, 150 Miss. 179, 191, 116 So. 734, 735 (1928), we do so far more readily in favor of next of kin than remote kin. Cross v. O'Cavanaugh, 198 Miss. 137, 147, 21 So.2d 473, 474 (1945). If we understand the facts correctly, Allan's mother was still alive on April 22, 1967, when he made his codicil, meaning that even then it was a near certainty that Allan was unaware that the Tinnins might wind up with his estate. Allan's mother died December 31, 1967, a bare month before her son's death on January 31, 1968. Nothing in the record tells us whether Allan, during January of 1968, was competent to revise his will in light of his mother's death.
The Tinnins' argument is filled with anomoly: because of the unenforceable racially restrictive intention of the testator, the trust, they argue, must fail and the assets must be distributed to four individuals we may say with confidence the testator never intended to benefit. We are asked to give effect to Allan Hobgood's intention by decreeing something we may say with confidence he never intended. Among our canons of construction is the notion that we should construe a will so as to "avoid a clearly unintended consequence." Estate of Bunch v. Heirs of Bunch, 485 So.2d 284, 285 (Miss. 1986).
The question resolves itself to whether, given the unenforceability of the racially restrictive clause, Allan Hobgood's reconstructed will should be held to direct that the trust continue on a non-discriminatory basis or that all of its assets go to the Tinnins. The will as reconstructed in accordance with the principles of Section III above is unclear in this regard. The record before us, which is wholly documentary, is inadequate to enable us to answer this question with confidence.
We hold Allan Hobgood's will, so reconstructed, ambiguous regarding the question before us. The Chancery Court erred when it construed the will wholly upon the documentary record. Resort to extrinsic evidence is desirable, if not essential, to the correct resolution of the weighty claims presented. For example, in deciding whether the Tinnins, as statutory residuary legatees, should prevail it would be helpful to know how close they were to Allan Hobgood, whether they were in fact *670 objects of his affection. See New Orleans Baptist Theological Seminary v. Lacy, 219 So.2d 665, 672 (Miss. 1969). On the other hand, the Court should ascertain, if possible, the power and source of Allan Hobgood's interest in helping young people go to college and how important this was vis-a-vis his clearly expressed racially discriminatory intent.
We vacate the Judgment entered October 15, 1984, and remand this case to the active docket of the Chancery Court of Lauderdale County for further proceedings consistent with this opinion. At trial on the merits, and because the will is ambiguous, parol or extrinsic evidence shall be admissible in accordance with our familiar rules. See Maupin v. Estate of Perry, 396 So.2d 613, 615 (Miss. 1981); Strickland v. Delta Investment Co., 163 Miss. 772, 781, 137 So. 734, 736 (1931); Weems, Mississippi Wills and Estates § 9-3, pp. 286-87 (1983).
In the absence of extrinsic evidence which, when coupled with the wording of Allan Hobgood's will reconstructed according to Section III above, will provide a discernible answer to the choice presented by this case, there are certain further principles recognized in our law to which the Chancery Court may resort. Charitable trusts are favored and should be enforced where possible. Alden v. Lewis, 254 Miss. 704, 717, 182 So.2d 600, 605 (1966). Instruments to purportedly creating charitable trusts will be liberally construed in favor of the charity. 5 Page, The Law of Wills § 41.7, pp. 185-188 (Bowe, et al., Ed. 1962) Where there are two possible constructions of the instrument in question, one of which will render the charitable gift valid and the other of which will cause it to fail, we will adopt the construction which will sustain the charitable bequest, absent manifest countervailing considerations. Bogert, The Law of Trusts and Trustees § 368, pp. 59-62 (Rev.2d Ed. 1977). Finally, there is a presumption, albeit a rebuttable one, that the testator preferred the charitable trust to survive so far as may be within the law.
REVERSED AND REMANDED
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., concurs in result only.
*671 
NOTES
[1] In his will Hobgood made provisions for persons whom he described as having been "kind and thoughtful to my father and mother." The testator made no provision in his will or in his codicil for any benefit to go to any of his relatives, other than his mother.
[2] Hobgood's will directed first and foremost that the funds be used only for his mother as long as she lived. Hobgood's mother predeceased him (she died on December 31, 1967, one month to the day before her son's death); hence, we are not concerned with those parts of the will making provision for her.
[3] In his codicil Hobgood made two specific requests to persons for "kindness to my father in his illness," and "kindness extended to me and my family." Neither of those individuals were related to Hobgood.
[4] In addition to the limitation discussed in this case, see Miss. Code Ann. § 91-5-25 (1972) (limitations on right to disinherit one's spouse); Miss. Code Ann. § 91-5-31 (1972) (statute of mortmain); Carter v. Berry, 243 Miss. 321, 136 So.2d 871 and 140 So.2d 843 (1962) (rule against perpetuities).
[5] See footnote 4 supra.
[6] Excellent summaries of the present state of the law regarding federal constitutional regulation of private educational trust burdened with racial and other discriminatory selection provisions may be found in Matter of Estate of Wilson, 59 N.Y.2d 461, 465 N.Y.S.2d 900, 452 N.E.2d 1228, 1235-37 (1983); and Shapiro v. Columbia Union National Bank and Trust Co., 576 S.W.2d 310, 316-21 (Mo. 1978). These cases consider the point in detail unnecessary to today's decision in light of the parties' concession that judicial enforcement of the racial exclusion is not available. See also cases collected in Annotation, Validity and Effect Of Gift For Charitable Purposes Which Excludes Otherwise Qualified Beneficiaries Because Of Their Race or Religion, 25 A.L.R.3d 736 (1969 and Supp. 1986); Bogert, The Law of Trusts and Trustees § 378, pp. 191-92 (Rev.2d Ed. 1977).